UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTATE OF NANA BARFI ADOMAKO, et al.,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>CITY OF FREMONT, et al.,<br><br>　　　　　Defendants. | Case No. 17-cv-06386-DMR<br><br>**ORDER ON DEFENDANTS' MOTION TO DISMISS**<br><br>Re: Dkt. No. 9 |

　　　　Plaintiffs Estate of Nana Barfi Adomako ("the Estate"); Nana N. Dwomoh, individually and as successor-in-interest to the Estate; and Augustina Yeboah filed a complaint against the City of Fremont ("Fremont"), police officer James Taylor, and ten Doe Defendants alleging claims arising out of the February 2017 shooting death of Mr. Nana Barfi Adomako. Fremont and Taylor now move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the complaint. [Docket No. 9.] The court held a hearing on January 25, 2018. For the following reasons, Defendants' motion is granted in part and denied in part.

**I.　BACKGROUND**

　　　　Augustina Yeboah is the decedent's mother. Nana N. Dwomoh is the decedent's brother and successor in interest to his estate. Together with the Estate, they make the following allegations in the complaint, all of which are taken as true for purposes of this motion.[1] On February 5, 2017 at about 4:20 p.m., Taylor shot and killed Mr. Adomako. Plaintiffs allege on information and belief that at the time of the shooting, Mr. Adomako had not committed any

---

[1] When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted).

"serious crime or other serious incident" to justify the use of deadly force against him. Compl. ¶¶ 13-14. They further allege that it was clear or should have been clear that at the time of the shooting that Mr. Adomako was "in the midst of some mental health breakdown or mental health crisis which necessitated the intervention of mental health professionals," and that Taylor and Does 1-8 had no reason to believe that he posed a deadly threat to anyone's physical safety. *Id.* at ¶ 14. Instead, Defendants "wrongly assessed the circumstances" and "violently confronted Mr. Adomako" by repeatedly firing multiple rounds at him, causing his death. *Id.* at ¶¶ 15-16. Plaintiffs allege upon information and belief that prior to and during the shooting, Mr. Adomako "made no aggressive movements, no furtive gestures, and no physical movements which would suggest to a reasonable officer that Mr. Adomako had the will, or the ability to inflict deadly harm against any other individual." *Id.* at ¶ 18.

As a result of Mr. Adomako's shooting death, Yeboah and Dwomoh allege that they have been deprived of Mr. Adomako's "life-long love, comfort, society, companionship, support, care, and sustenance." *Id.* at ¶ 19. Dwomoh also seeks reimbursement for funeral and burial expenses he incurred. *Id.* at ¶ 20.

Plaintiffs allege the following claims against Defendants on behalf of themselves and the Estate: 1) 42 U.S.C. § 1983 claim for unreasonable search and seizure in violation of the Fourth Amendment, against Taylor and Does 1-8; 2) section 1983 claim for excessive force and denial of medical care in violation of the Fourth Amendment, against Taylor and Does 1-8; 3) section 1983 claim for violation of Plaintiffs' right to a familial relationship, based upon the Fourteenth Amendment, against Taylor and Does 1-8; 4) section 1983 municipal liability claim under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), against Fremont and Does 9-10; 5) false imprisonment/wrongful death, against all Defendants; 6) battery/wrongful death, against all Defendants; and 7) negligence/wrongful death, against all Defendants.

Defendants move to dismiss the complaint.

## II. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).

2

When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint," *Erickson*, 551 U.S. at 94 (2007) (citation omitted), and may dismiss a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)) (quotation marks omitted). A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Lee v. City of L.A.*, 250 F.3d 668, 679 (9th Cir. 2001), overruled on other grounds by *Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

### III. DISCUSSION

As a preliminary matter, with the exception of the *Monell* claim against Fremont, the complaint appears to bring each claim against "all Defendants." At the hearing, Plaintiffs' counsel clarified that claims one through three and five through seven are brought solely against Taylor. In other words, only the fourth claim for municipal liability is brought against Fremont. Additionally, paragraph 10 states that the "civil action is brought for the redress of alleged deprivations of constitutional rights as protected by 42 U.S.C. §§ 1983, 1985, 1986, and 1988." At the hearing, Plaintiffs' counsel stated that Plaintiffs assert this action pursuant only to section 1983. Plaintiffs shall amend the complaint in conformance with these representations.

#### A. Section 1983 Claims against Taylor and Does 1-8

Plaintiffs' section 1983 claims against Taylor allege that he wrongfully detained and arrested Mr. Adomako (claim 1). Compl. ¶¶ 22, 24. The second claim alleges that Taylor's use of deadly force was excessive and that he failed to provide timely medical treatment to Mr. Adomako (claim 2). *Id*. at ¶¶ 30-32.

Defendants move to dismiss claim two as insufficiently pleaded. They also move to

3

dismiss the section 1983 claims to the extent they are brought on behalf of Dwomoh and Yeboah individually, arguing that these plaintiffs lack standing to assert the claims on their own behalf. They further argue that Dwomoh has failed to show that he is authorized to prosecute a survival action on Mr. Adomako's behalf.

As standing is a threshold issue that "naturally precedes the question of whether that party has successfully stated a claim," the court addresses it first. *See Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 369 (9th Cir. 1998).

### 1. Survivorship Claims

"Fourth Amendment rights are personal rights which . . . may not be vicariously asserted." *Alderman v. United States*, 394 U.S. 165, 174 (1969). "In § 1983 actions, however, the survivors of an individual killed as a result of an officer's excessive use of force may assert a Fourth Amendment claim *on that individual's behalf* if the relevant state's law authorizes a survival action." *Moreland*, 159 F.3d at 369 (emphasis added). "The party seeking to bring a survival action bears the burden of demonstrating that a particular state's law authorizes a survival action and that the plaintiff meets that state's requirements for bringing a survival action." *Id*. Under California law, "a cause of action for . . . a person is not lost by reason of the person's death, but survives subject to the applicable limitations period." Cal. Civ. Proc. Code § 377.20(a).[2] A cause of action belonging to the decedent "passes to the decedent's successor in interest, . . . and an action may be commenced by the decedent's personal representative or, if none, by the decedent's successor in interest." Cal. Civ. Proc. Code § 377.30; *Tatum v. City & Cty. of San Francisco*, 441 F.3d 1090, 1093 n.2 (9th Cir. 2006) ("Under California law, if an injury giving rise to liability occurs before a decedent's death, then the claim survives to the decedent's estate. Where there is no personal representative for the estate, the decedent's 'successor in interest' may prosecute the

---

[2] A survival action is distinct from a wrongful death action. "[U]nlike a wrongful death claim, the survival statutes do not *create* a cause of action but merely prevent the abatement of the decedent's cause of action and provide for its enforcement by the decedent's personal representative or successor in interest." *San Diego Gas & Elec. Co. v. Superior Court*, 146 Cal. App. 4th 1545, 1553 (2007) (emphasis in original) (citing Cal. Civ. Proc. Code §§ 377.20, 377.30). A wrongful death action is a separate claim brought by a decedent's heirs for damages they personally suffered as a result of the decedent's death. Cal. Civ. Proc. Code § 377.60; *Hayes v. Cty. of San Diego*, 736 F.3d 1223, 1229 (9th Cir. 2013).

survival action if the person purporting to act as successor in interest satisfies the requirements of California law. . . ." (internal citations omitted) (citing Cal. Civ. Proc. Code §§ 377.30, 377.32)). California Code of Civil Procedure section 377.11 states that the term "'decedent's successor in interest' means the beneficiary of the decedent's estate or other successor in interest who succeeds to a cause of action or to a particular item of property that is the subject of a cause of action." Cal. Code Civ. Proc. § 377.11.

All three plaintiffs—Dwomoh in his individual capacity, Dwomoh as the successor in interest to the Estate, and Yeboah—assert the section 1983 claims based on Mr. Adomako's detention, the use of excessive force, and the failure to provide medical treatment, even though the decedent is the "only the person whose Fourth Amendment rights were violated," and therefore is the only person who can sue to vindicate those rights. *Moreland*, 159 F.3d at 369. Accordingly, these claims are dismissed to the extent they are brought by any plaintiff other than the Estate.

Next, Defendants argue that to the extent Dwomoh seeks to bring these claims on behalf of the Estate, he has not satisfied the requirements of California Code of Civil Procedure section 377.32. Section 377.32(a) states that a person "who seeks to commence an action or proceeding or to continue a pending action or proceeding as the decedent's successor in interest . . . shall execute and file an affidavit or declaration under penalty of perjury" providing specific information about the decedent, the decedent's estate, and the person's status as the decedent's successor in interest. Cal. Code Civ. Proc. § 377.32(a)(1)-(7). Dwomoh filed a declaration with the complaint in which he states that he is "the natural brother of the Decedent," that there are no proceedings pending in California for the administration of the Estate, and that Dwomoh is his brother's "Successor in Interest (as defined in C.C.P. § 377.11) and [he] succeed[s] to the Decedent's interest in this matter." [Docket No. 1-1 (Dwomoh Decl., Oct. 25, 2017) ¶¶ 2-4.]

Defendants argue that Dwomoh's declaration is insufficient because it does not state the place of Mr. Adomako's death as required by section 377.32(a)(2) and does not state that "[n]o other person has a superior right to commence the action or proceeding or to be substituted for the decedent in the pending action or proceeding." Cal. Code Civ. Proc. § 377.32(a)(6). The declaration also does not include a certified copy of Mr. Adomako's death certificate, as required

5

1 by the statute. *See* Cal. Code Civ. Proc. § 377.32(c). Accordingly, Plaintiffs shall file an amended declaration that satisfies the requirements of section 377.32(a) when they file their amended complaint.

### 2. Sufficiency of the Claims

Defendants next move to dismiss the section 1983 claims against Taylor and Does 1-8 for excessive force and failure to provide medical care.

#### a. Excessive Force

Defendants move to dismiss the excessive force claim on the ground that the complaint states "no facts at all showing the circumstances surrounding Taylor's use of force," or any facts to conclude that his use of force was unreasonable. Mot. 12.

42 U.S.C. § 1983 provides a claim for "the deprivation of any rights, privileges, or immunities secured by the Constitution or laws of the United States" by any person acting "under color of any statute, ordinance, regulation, custom, or usage." *Gomez v. Toledo,* 446 U.S. 635, 638 (1980). Section 1983 "is not itself a source of substantive rights," but rather a method for vindicating federal rights conferred elsewhere. *Graham v. Connor*, 490 U.S. 386, 393-394 (1989) (quotation omitted). To state a claim under section 1983, a plaintiff must allege: (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct violated a right secured by the Constitution or laws of the United States. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

A claim of excessive force in the context of an arrest or investigatory stop implicates the Fourth Amendment right to be free from "unreasonable . . . seizures." U.S. Const. amend. IV; *see Graham*, 490 U.S. at 394. Courts analyze claims of excessive force under an "objective reasonableness" standard. *Bryan v. MacPherson*, 630 F.3d 805, 817 (9th Cir. 2010) (citing *Graham*, 490 U.S. at 395). The reasonableness inquiry in excessive force cases is an objective one: whether the officer's actions are objectively reasonable in light of the facts and circumstances confronting him, without regard to his underlying intent or motivation and without the "20/20 vision of hindsight." *Graham*, 490 U.S. at 396. "Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the

6

nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* (citations and internal quotation marks omitted).

Because the reasonableness standard is not capable of precise definition or mechanical application, "its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*. The "most important single element" is whether there is an immediate threat to safety. *Smith v. City of Hemet*, 394 F.3d 689, 702 (9th Cir. 2005) (en banc) (quoting *Chew v. Gates*, 27 F.3d 1432, 1441 (9th Cir. 1994)). These factors "are not exclusive. Rather, [the court] examine[s] the totality of the circumstances and consider[s] 'whatever specific factors may be appropriate in a particular case, whether or not listed in *Graham*.'" *Bryan*, 630 F.3d at 826 (citing *Franklin v. Foxworth*, 31 F.3d 873, 876 (9th Cir. 1994)). When the challenged force is deadly force, it "satisfies Fourth Amendment standards '[w]here the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others." *Blanford v. Sacramento Cty.*, 406 F.3d 1110, 1115 (9th Cir. 2005) (quoting *Tenn. v. Garner*, 471 U.S. 1, 11 (1985)).

While the factual allegations in the complaint are sparse, the Estate has sufficiently stated an excessive force claim. The complaint alleges that when Taylor and Does 1-8 first approached Mr. Adomako, it was clear or should have been clear that he was "in the midst of some mental health breakdown or mental health crisis." Instead of summoning mental health professionals, the officers instead "violently confronted" Mr. Adomako without probable cause to believe that he had committed or was about to commit a deadly crime. Compl. ¶¶ 14, 15. The complaint further alleges that the officers had no reason to believe that he "was armed, dangerous, or posed a deadly threat to anyone's safety," and that Mr. Adomako made no "aggressive movements, furtive gestures, [or] . . . physical movements which would suggest to a reasonable officer that Mr. Adomako had the will, or the ability to inflict deadly harm against any other individual." *Id*. at ¶¶ 14, 18. However, the officers fired multiple deadly rounds at Mr. Adomako without warning,

7

resulting in his death. *Id*. at ¶ 16. These allegations state a plausible excessive force claim, because if they are taken as true, they suggest that the officers' deadly force was unreasonable since Mr. Adomako did not pose a threat of serious physical harm to the officers or others at the time of the shooting. Defendants' motion to dismiss the excessive force claim is denied.

### b. Denial of Medical Care

Defendants next argue that the complaint states no facts to support a section 1983 claim for denial of medical care.

The complaint does not allege which amendment governs the denial of medical care claim. In their motion, Defendants analyze the claim under the Fourteenth Amendment standard applicable to pretrial detainees. Mot. 14 (citing *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1070 (9th Cir. 2016) (discussing elements of claim for deliberate indifference claim by pretrial detainee). Plaintiffs apply the Eighth Amendment standard for "deliberate indifference to serious medical needs," which is applicable to prisoners. Opp'n 14 (citing *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006)). Neither party is correct. Claims of denial of medical care during and immediately following an arrest are analyzed under the Fourth Amendment and its "objective reasonableness" standard. *Borges v. City of Eureka*, No. 15-CV-00846-YGR, 2017 WL 363212, at *6 (N.D. Cal. Jan. 25, 2017) (citing *Tatum v. City & Cty. of San Francisco*, 441 F.3d 1090, 1098-99 (9th Cir. 2006)).

"The Fourth Amendment requires law enforcement officers to provide objectively reasonable post-arrest care to an apprehended suspect." *Mejia v. City of San Bernardino*, No. EDCV 11-00452 VAP, 2012 WL 1079341, at *5 n.12 (C.D. Cal. Mar. 30, 2012) (citing *Tatum*, 441 F.3d at 1099). However, the Ninth Circuit has not prescribed the contours of what constitutes objectively reasonable post-arrest care to a suspect. *Id.* (citing *Tatum*, 441 F.3d at 1099). "At a minimum, though, the Ninth Circuit has required police officers to 'seek necessary medical attention by promptly summoning help or taking the injured arrestee to a hospital.'" *Borges*, 2017 WL 363212, at *6 (citing *Estate of Cornejo ex rel. Solis v. City of Los Angeles*, 618 Fed. Appx. 917, 920 (9th Cir. 2015) (citing *Tatum*, 441 F.3d at 1099)). For example, the arrestee in *Tatum* had "bulging" eyes and heavy breathing, making it clear he was in distress after being handcuffed.

8

441 F.3d at 1099. Holding that "a police officer who promptly summons the necessary medical assistance has acted reasonably for purposes of the Fourth Amendment," the court concluded that the officers had not violated the plaintiff's Fourth Amendment rights even though they had not performed CPR, because officers are not required to provide "what hindsight reveals to be the most effective medical care for an arrested suspect." *Id.* at 1098-99 (citing *Maddox v. City of Los Angeles*, 792 F.2d 1408, 1415 (9th Cir. 1986)).

Here, Plaintiffs allege that after the shooting, "Mr. Adomako was then in need of immediate medical treatment and care," but that the officers "failed to provide timely medical treatment to Mr. Adomako which resulted in further significant injury or the unnecessary and wanton infliction of pain on Mr. Adomako, and was a substantial factor in causing his death." Compl. ¶ 31. This allegation is vague, conclusory, and lacks factual support. At the hearing, Plaintiffs' counsel represented that the claim is based upon the officers' delay in summoning medical assistance for Mr. Adomako after he was shot. Accordingly, this claim is dismissed with leave to amend facts to support Plaintiff's theory of denial of medical care.

### B. Interference with Familial Relationship

Plaintiffs also bring a section 1983 claim for violation of Plaintiffs' Fourteenth Amendment right to a familial relationship.

Family members may assert a "Fourteenth Amendment claim based on the related deprivation of their liberty interest arising out of their relationship with" a decedent, separate from a survival action for Fourth Amendment violations. *Moreland*, 159 F.3d at 371; *see also Byrd v. Guess*, 137 F.3d 1126, 1133 (9th Cir. 1998), *abrogated by statute on other grounds* ("The underlying constitutional rights at issue . . . are the Fourteenth Amendment liberty interests of a mother and wife in the society and companionship of the deceased."). "This substantive due process claim may be asserted by both the parents and children of a person killed by law enforcement officers." *Moreland*, 159 F.3d at 371. Although it appears that this claim is brought on behalf of all three plaintiffs, the claim may not be asserted by the Estate. *See Curnow v. Ridgecrest Police*, 952 F.2d 321, 325 (9th Cir. 1991) ("[w]hile the person who claims excessive force was directed at him or her can only raise a fourth amendment claim, a parent who claims

9

loss of the companionship and society of his or her child, or vice versa, raises a different constitutional claim.").

Defendants move to dismiss this claim on the ground that it is based upon the section 1983 claims alleging violations of Mr. Adomako's Fourth Amendment rights, which they argue are insufficiently pleaded. "Where a claim for interference with familial relationships is integrally predicated upon, or entwined with, other conduct that is alleged to be unconstitutional, a finding that the other conduct was constitutional generally will preclude recovery for interference with familial relationship." *J.P. ex rel. Balderas v. City of Porterville*, 801 F. Supp. 2d 965, 988-89 (E.D. Cal. 2011) (citing *Gausvik v. Perez*, 392 F.3d 1006, 1008 (9th Cir. 2004)). As discussed above, the Estate has plausibly alleged a section 1983 claim for excessive force. Defendants' motion to dismiss the familial association claim is therefore denied as to Yeboah and Dwomoh. To the extent the claim is brought by the Estate, it is dismissed.

### C. *Monell* Claim

Plaintiffs' fourth claim is a section 1983 *Monell* claim against Fremont and Does 9-10. Defendants move to dismiss the claim, arguing that Plaintiffs have not stated a claim for violation of any constitutional rights. They also argue that the complaint does not sufficiently allege a policy, custom, or practice that was the moving force behind any violation of constitutional rights, or facts to support ratification or inadequate training theories of *Monell* liability.

A municipality may face section 1983 liability if it "'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Monell*, 436 U.S. at 692). However, the municipality may be held liable "only for '[its] *own* illegal acts.'" *Id.* (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986)). It cannot be held vicariously liable for its employees' actions. *Id.* (citations omitted). To establish municipal liability, plaintiffs "must prove that 'action pursuant to official municipal policy' caused their injury." *Id.* (quoting *Monell*, 436 U.S. at 691). "The 'official policy' requirement 'was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality,' and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur*, 475 U.S. at 479-80 (emphasis in original). Official municipal

10

policy includes "the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick*, 563 U.S. at 61 (citations omitted). Such policy or practice must be a "moving force behind a violation of constitutional rights." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (citing *Monell*, 436 U.S. at 694).

In order to establish *Monell* liability, a plaintiff must prove that (1) he or she possessed a constitutional right of which he was deprived; (2) "that the municipality had a policy"; (3) "that this policy amounts to deliberate indifference to the plaintiff's constitutional right"; and (4) "that the policy is the moving force behind the constitutional violation." *Dougherty*, 654 F.3d at 900 (quotation omitted). "A single constitutional deprivation ordinarily is insufficient to establish a longstanding practice or custom." *Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999). However, an isolated constitutional violation may be sufficient to establish a municipal policy in the following three situations: 1) "when the person causing the violation has 'final policymaking authority,'" *see id*. at 1235; 2) when "the final policymaker 'ratified' a subordinate's actions," *see id*. at 1238; and 3) when "the final policymaker acted with deliberate indifference to the subordinate's constitutional violations." *See id*. at 1240.

Here, Plaintiffs allege that Fremont knowingly maintained official customs, policies, and practices of employing police officers with "dangerous propensities for abusing their authority" and using excessive and deadly force; inadequately supervising, training, and disciplining police officers who used excessive and deadly force; maintaining inadequate procedures for reporting, supervising, investigating, and disciplining "intentional misconduct" by police officers; detaining and arresting individuals without probable cause or reasonable suspicion, and using excessive force. Compl. ¶ 49. These allegations are insufficient to show a pattern, policy, or custom by Fremont that caused Plaintiffs' injuries. The complaint alleges only facts specific to Mr. Adomako's shooting. It contains no factual allegations demonstrating a practice or custom beyond that incident. Moreover, Plaintiffs' allegation that Fremont policies were "a significantly influential force behind the injuries" is vague and conclusory. *See id*. at ¶ 53.

Plaintiffs' ratification and inadequate training theories fare no better. "To show

11

ratification, a plaintiff must prove that the 'authorized policymakers approve a subordinate's decision and the basis for it.'" *Christie*, 176 F.3d at 1239 (quoting *City of St. Louis v. Paprotnik*, 485 U.S. 112, 127 (1988)). Plaintiffs allege upon information and belief that Defendants' conduct in the shooting "was ratified" by police department supervisorial officers. Compl. ¶ 47. However, there are no allegations that any "authorized policymakers" knew of and approved the officers' actions "before the alleged constitutional violations ceased." *See Christie*, 176 F.3d at 1239.

Plaintiffs also appear to base their *Monell* claim in part on a failure to train theory. *See* Compl. ¶ 49. Under limited circumstances, "a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick*, 563 U.S. at 61. However, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Id*. In order to establish liability under this theory, the "municipality's failure to train its employees in a relevant respect must amount to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" *Id.* (citing *Canton v. Harris*, 489 U.S. 378, 388 (1989)). This "stringent standard of fault" requires proof that "policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights." *Connick*, 563 U.S. at 61; *see also Canton*, 489 U.S. at 389 ("[o]nly where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality—a 'policy' as defined by our prior cases—can a city be liable for such a failure under § 1983."). The training deficiency must be the "functional equivalent of a decision by the city itself to violate the Constitution." *Id.* "The issue is whether the training program is adequate and, if it is not, whether such inadequate training can justifiably be said to represent municipal policy." *Long v. Cty. of Los Angeles*, 442 F.3d 1178, 1186 (9th Cir. 2006) (citing *Canton*, 489 U.S. at 39).

In order to establish section 1983 municipal liability based on a failure to train, a plaintiff must show: 1) deprivation of a constitutional right; 2) a training policy that "amounts to deliberate indifference to the [constitutional] rights of the persons with whom [the police] are likely to come into contact"; and 3) that his constitutional injury would have been avoided had the municipality

12

properly trained the officers. *Blankenhorn v. City of Orange*, 485 F.3d 463, 484 (9th Cir. 2007) (quoting *Canton*, 489 U.S. at 388-89) (first alteration in original). While the complaint plausibly alleges a violation of Mr. Adomako's Fourth Amendment right to be free from excessive force, the complaint does not contain any specific factual allegations in support of the remaining elements of a *Monell* claim. Instead, the complaint alleges generally that Fremont "inadequately" trained its police officers and "improperly train[ed]" officers "regarding shooting at individuals during the course of a physical altercation." Compl. ¶ 49(b), (h). These conclusory, unspecific allegations are insufficient. Plaintiffs' *Monell* claim is dismissed with leave to amend.

### D. Wrongful Death Claim

Plaintiffs' fifth claim is entitled "false imprisonment—Cal. Govt. Code § 820—wrongful death."[3] Compl. 15. Defendants move to dismiss the claim as improperly asserted by the Estate. They also argue that Plaintiffs fail to state a wrongful death claim. At the hearing, Plaintiffs' counsel clarified that the claim is a wrongful death claim brought by Yeboah and Dwomoh pursuant to California Code of Civil Procedure § 377.60 for the damages they personally suffered as a result of Mr. Adomako's death due to his alleged wrongful detention and arrest and the excessive use of force. Counsel conceded that the claim may not be asserted by the Estate.

A claim for "wrongful death belongs not to the decedent [or prospective decedent], but to the persons specified [by statute]." *Quiroz v. Seventh Ave. Ctr.*, 140 Cal. App. 4th 1256, 1263 (2006) (citations and quotations omitted). "It is a new cause of action that arises on the death of the decedent and it is vested in the decedent's heirs." *Id.* (citation omitted). "Its purpose is to compensate specified persons—heirs—for the loss of companionship and for other losses suffered as a result of a decedent's death." *Id.* (citation omitted). Such a claim may only be asserted by the decedent's personal representative or enumerated relatives of the decedent. Cal. Code Civ. Proc. § 377.60.

Under California law, "[t]he elements of the cause of action for wrongful death are the tort (negligence or other wrongful act), the resulting death, and the damages, consisting of the

---

[3] California Government Code section 820 states that "a public employee is liable for injury caused by his act or omission to the same extent as a private person." Cal. Gov't Code § 820(a).

13

pecuniary loss suffered by the heirs." *Quiroz*, 140 Cal. App. 4th at 1263 (citation and quotation marks omitted). "[A]n officer's lack of due care can give rise to negligence liability for the intentional shooting death of a suspect." *Munoz v. Olin*, 24 Cal. 3d 629, 634 (1979) (citing *Grudt v. City of Los Angeles*, 2 Cal. 3d 575, 587 (1970)). In order to prove wrongful death, "a plaintiff must show that the officer violated his 'duty to use reasonable force under the totality of the circumstances.'" *C.E.W. v. City of Hayward*, No. 13-CV-04516-LB, 2015 WL 1926289, at *14 (N.D. Cal. Apr. 27, 2015) (quoting *Brown v. Ransweiler*, 171 Cal. App. 4th 516, 526 n.10 (2009)). Since the Estate has plausibly alleged a claim for excessive force, Dwomoh and Yeboah may individually maintain claims for wrongful death.

### E. Battery and Negligence

Plaintiffs' sixth and seventh claims are for "battery—Cal. Govt. Code § 820—wrongful death" and "negligence—Cal. Govt. Code § 820—wrongful death." At the hearing, Plaintiffs' counsel clarified that these are survivorship claims for battery and negligence asserted on behalf of the Estate only. They are not "wrongful death" claims for damages suffered by Mr. Adomako's relatives. *See Quiroz*, 140 Cal. App. 4th at 1264 ("a survivor cause of action is . . . a separate and distinct cause of action which belonged to the decedent before death but, by statute, survives that event.").

With respect to battery, "[t]he law governing a state law claim for battery is the same as that used to analyze a claim for excessive force under the Fourth Amendment." *Warren v. Marcus*, 78 F. Supp. 3d 1228, 1248 (N.D. Cal. 2015) (citing *Sorgen v. City & Cty. of San Francisco,* No. C 05–03172 TEH, 2006 WL 2583683, at *9 (N.D. Cal. Sept. 7, 2006)). As the Estate has sufficiently pleaded an excessive force claim, the court denies the motion to dismiss its battery claim.

The claim for negligence is based upon the officers' failure to properly assess, detain, and arrest Mr. Adomako; use of excessive force; negligent use of a canine police dog; failure to provide medical care to Mr. Adomako following the shooting; and negligent handling of evidence

14

and witnesses during the investigation following the shooting.[4] Compl. ¶ 72. Defendants argue that the complaint does not contain facts to support these theories of negligence; for example, there are no allegations about how or when a police dog was used during the incident.

A negligence claim requires a plaintiff to establish: "(1) a legal duty to use due care; (2) a breach of that duty; and (3) injury that was proximately caused by the breach." *Knapps v. City of Oakland*, 647 F. Supp. 2d 1129, 1164 (N.D. Cal. 2009) (citing *Ladd v. Cty. of San Mateo,* 12 Cal. 4th 913, 917 (1996)). Under California law, "police officers have a duty not to use excessive force." *Id.* (citing *Munoz v. City of Union City,* 120 Cal. App. 4th 1077, 1101 (2004)). As the Estate has pleaded an excessive force claim, the court denies the motion to dismiss the negligence claim to the extent that it is based on excessive force. However, the complaint contains no factual allegations to support the other bases for the negligence claim against the officers, such as failure to provide medical care, handling of the police dog, or mishandling evidence and witnesses after the shooting. Accordingly, that portion of the claim is dismissed with leave to amend.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted in part and denied in part. Plaintiffs shall file an amended complaint in conformance with this order within 14 days of the date of this order.

**IT IS SO ORDERED.**

Dated: January 29, 2018



Donna M. Ryu
United States Magistrate Judge

---

[4] The negligence claim also includes allegations about Fremont's failure to properly train its officers with respect to interacting with citizens suffering mental health crises. Compl. ¶ 72. However, Plaintiffs' counsel conceded at the hearing that the only claim brought against Fremont is the *Monell* claim.