UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTATE OF NANA BARFI ADOMAKO, et al., <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF FREMONT, et al., <br><br> Defendants. | Case No. 17-cv-06386-DMR <br><br> **ORDER ON MOTION TO DISMISS CLAIM FOR MUNICIPAL LIABILITY** <br><br> Re: Dkt. No. 33 |

Plaintiffs Estate of Nana Barfi Adomako ("the Estate"), Nana N. Dwomoh, and Augustina Yeboah filed a complaint against the City of Fremont ("Fremont"), police officer James Taylor, and ten Doe Defendants alleging claims arising out of the February 2017 shooting death of Mr. Adomako. Fremont and Taylor now move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiffs' claim for municipal liability under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). [Docket No. 33.] This matter is suitable for disposition without oral argument. Civ. L.R. 7-1(b). For the following reasons, Defendants' motion is granted.

**I.  BACKGROUND**

Augustina Yeboah is the decedent's mother and successor in interest to his estate. Nana N. Dwomoh is the decedent's brother and administrator of his estate. The FAC contains the following allegations, all of which are taken as true for purposes of this motion.[1] On February 5, 2017 at about 4:20 p.m., Taylor shot and killed Mr. Adomako. Plaintiffs allege on information

---

[1] When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted).

and belief that at the time of the shooting, Mr. Adomako had not committed any "serious crime or other serious incident" to justify the use of deadly force against him. [Docket No. 32 (First Amended Complaint, "FAC") ¶¶ 13-14.] They further allege that it was clear or should have been clear at the time of the shooting that Mr. Adomako was "in the midst of some mental health breakdown or mental health crisis which necessitated the intervention of mental health professionals," and that Taylor and Does 1-8 had no reason to believe that he posed a deadly threat to anyone's physical safety. *Id*. at ¶ 14. Instead, Defendants "wrongly assessed the circumstances" and "violently confronted Mr. Adomako" by repeatedly firing multiple rounds at him, causing his death. *Id*. at ¶¶ 15-16. Plaintiffs allege upon information and belief that prior to and during the shooting, Mr. Adomako "made no aggressive movements, no furtive gestures, and no physical movements which would suggest to a reasonable officer that Mr. Adomako had the will, or the ability to inflict deadly harm against any other individual." *Id*. at ¶ 18.

Plaintiffs allege the following claims against Defendants: 1) 42 U.S.C. § 1983 claim for unreasonable search and seizure in violation of the Fourth Amendment, by the Estate and Yeboah against Taylor and Does 1-8; 2) section 1983 claim for excessive force and denial of medical care in violation of the Fourth Amendment, by the Estate and Yeboah against Taylor and Does 1-8; 3) section 1983 claim for interference with Yeboah's right to a familial relationship and freedom of association, based upon the Fourteenth Amendment, by Yeboah against Taylor and Does 1-8; 4) section 1983 municipal liability claim under *Monell*, by the Estate against Fremont and Does 9-10; 5) false detention, by the Estate against all Defendants; 6) battery/wrongful death, by the Estate against all Defendants; and 7) negligence/wrongful death, by the Estate against all Defendants.

The court previously granted in part Defendants' motion to dismiss the complaint with leave to amend. *Estate of Nana Barfi Adomako v. City of Fremont*, No. 17-cv-06386-DMR, 2018 WL 587146 (N.D. Cal. Jan. 29, 2018). In relevant part, the court dismissed the section 1983 municipal liability claim with leave to amend, holding that the allegations in the complaint were insufficient to show a pattern, policy, or custom by Fremont that caused Plaintiffs' injuries. The court also held that the complaint failed to allege facts to support ratification and inadequate training theories of *Monell* liability. *Id*. at *6-8. Plaintiffs timely filed their first amended

complaint, and Defendants now move to dismiss the Estate's *Monell* claim.

## II. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint," *Erickson*, 551 U.S. at 94 (2007) (citation omitted), and may dismiss a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)) (quotation marks omitted). A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Lee v. City of L.A.*, 250 F.3d 668, 679 (9th Cir. 2001), overruled on other grounds by *Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

## III. DISCUSSION

Defendants argue that the Estate's *Monell* claim remains deficient, asserting that the FAC does not add facts to state a valid *Monell* claim under any theory.

A municipality may face section 1983 liability if it "'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Monell*, 436 U.S. at 692). However, the municipality may be held liable "only for '[its] *own* illegal acts.'" *Id.* (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986)). It cannot be held vicariously liable for its employees' actions. *Id.* (citations omitted). To establish municipal liability, plaintiffs "must prove that 'action pursuant to official municipal policy' caused their injury." *Id.* (quoting *Monell*, 436 U.S. at 691). "The 'official policy' requirement 'was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality,' and

thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur*, 475 U.S. at 479-80 (emphasis in original). Official municipal policy includes "the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick*, 563 U.S. at 61 (citations omitted). Such policy or practice must be a "moving force behind a violation of constitutional rights." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (citing *Monell*, 436 U.S. at 694).

In order to establish *Monell* liability, a plaintiff must prove that (1) he or she possessed a constitutional right of which he was deprived; (2) "that the municipality had a policy"; (3) "that this policy amounts to deliberate indifference to the plaintiff's constitutional right"; and (4) "that the policy is the moving force behind the constitutional violation." *Dougherty*, 654 F.3d at 900 (quotation omitted). "A single constitutional deprivation ordinarily is insufficient to establish a longstanding practice or custom." *Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999). However, an isolated constitutional violation may be sufficient to establish a municipal policy in the following three situations: 1) "when the person causing the violation has 'final policymaking authority,'" *see id.* at 1235; 2) when "the final policymaker 'ratified' a subordinate's actions," *see id.* at 1238; and 3) when "the final policymaker acted with deliberate indifference to the subordinate's constitutional violations." *See id.* at 1240.

Here, Plaintiffs allege that Fremont knowingly maintained official customs, policies, and practices of employing police officers with "dangerous propensities for abusing their authority" and using excessive and deadly force; inadequately supervising, training, and disciplining police officers who used excessive and deadly force; maintaining inadequate procedures for reporting, supervising, investigating, and disciplining "intentional misconduct" by police officers; detaining and arresting individuals without probable cause or reasonable suspicion, and using excessive force. FAC ¶ 49. Additionally, Plaintiffs allege that Fremont's police department supervisorial officers ratified Defendants' conduct. *Id.* at ¶¶ 47, 49.

Based on the court's comparison of the original complaint and the FAC, it appears that the Plaintiffs have added allegations regarding two additional "official recognized custom[s],

4

polic[ies], and practice[s]" by Fremont, as follows:

>	a.	Shooting unarmed individuals and then justifying the shooting by alleging that the suspect was violent and/or reaching for the officers' weapon; [and]
>
>	b.	Improperly training officers on how to assess, deal and confront persons suspected to be suffering from a mental illness including the use of deadly force against these individuals instead of employing less than lethal techniques

FAC ¶ 49(a), (b).

The court concludes that the allegations in the FAC are insufficient to plead a pattern, policy, or custom by Fremont that caused Plaintiffs' injuries. As with the original complaint, the FAC alleges only facts specific to Mr. Adomako's shooting. Although the FAC adds the allegation that Fremont has a policy of "[s]hooting unarmed individuals and then justifying the shooting by alleging that the suspect was violent and/or reaching for the officers' weapon," the FAC contains no factual allegations to support the existence of a practice or custom beyond the incident involving Mr. Adomako. *See Bagley v. City of Sunnyvale*, No. 16-CV-02250-LHK, 2017 WL 344998, at *15 (N.D. Cal. Jan. 17, 2017) (finding custom or practice inadequately pleaded where plaintiff only pleaded actions relating to his own arrest and prosecution). Moreover, Plaintiffs' allegation that Fremont policies were "affirmatively linked to and were a significantly influential force behind the injuries" is vague and conclusory. *See id*. at ¶ 53.

Plaintiffs also allege ratification and inadequate training theories. "To show ratification, a plaintiff must prove that the 'authorized policymakers approve a subordinate's decision and the basis for it.'" *Christie*, 176 F.3d at 1239 (quoting *City of St. Louis v. Paprotnik*, 485 U.S. 112, 127 (1988)). A police department's "mere failure to discipline [its officers] does not amount to ratification of their allegedly unconstitutional actions." *Sheehan v. City & Cty. of San Francisco*, 743 F.3d 1211, 1231 (9th Cir. 2014), *rev'd in part, cert. dismissed in part sub nom.*, 135 S. Ct. 1765 (2015). As in the original complaint, Plaintiffs allege upon information and belief that Defendants' conduct in the shooting "was ratified" by police department supervisorial officers. Compl. ¶ 47. However, there are no allegations that any "authorized policymakers" knew of and approved the officers' actions "before the alleged constitutional violations ceased." *See Christie*,

176 F.3d at 1239.

As to Plaintiffs' failure to train theory, under limited circumstances, "a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick*, 563 U.S. at 61. However, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Id.* In order to establish liability under this theory, the "municipality's failure to train its employees in a relevant respect must amount to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" *Id.* (citing *Canton v. Harris*, 489 U.S. 378, 388 (1989)). This "stringent standard of fault" requires proof that "policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights." *Connick*, 563 U.S. at 61; *see also Canton*, 489 U.S. at 389 ("[o]nly where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality—a 'policy' as defined by our prior cases—can a city be liable for such a failure under § 1983."). The training deficiency must be the "functional equivalent of a decision by the city itself to violate the Constitution." *Id.* "The issue is whether the training program is adequate and, if it is not, whether such inadequate training can justifiably be said to represent municipal policy." *Long v. Cty. of Los Angeles*, 442 F.3d 1178, 1186 (9th Cir. 2006) (citing *Canton*, 489 U.S. at 39).

In order to establish section 1983 municipal liability based on a failure to train, a plaintiff must show: 1) deprivation of a constitutional right; 2) a training policy that "amounts to deliberate indifference to the [constitutional] rights of the persons with whom [the police] are likely to come into contact"; and 3) that his constitutional injury would have been avoided had the municipality properly trained the officers. *Blankenhorn v. City of Orange*, 485 F.3d 463, 484 (9th Cir. 2007) (quoting *Canton*, 489 U.S. at 388-89) (first alteration in original). While the court previously concluded that the complaint plausibly alleged a violation of Mr. Adomako's Fourth Amendment right to be free from excessive force, the FAC does not contain any specific factual allegations in support of the remaining elements of a *Monell* claim. Specifically, the FAC states no non-conclusory facts as to Fremont's police training policy or program and fails to plausibly allege any

6

facts to support a causal link between the training program and the Estate's excessive force claim. Instead, the complaint alleges generally that Fremont "[i]mproperly train[ed] officers on how to assess, deal and confront persons suspected to be suffering from a mental illness," "inadequately" trained its police officers, and "improperly train[ed]" officers "regarding shooting at individuals during the course of a physical altercation." FAC ¶ 49(b), (d), (j). These conclusory, unspecific allegations are unsupported by any facts and are insufficient.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the Estate's *Monell* claim is granted. As Plaintiffs already had an opportunity to amend the *Monell* claim, it is dismissed without leave to amend.

**IT IS SO ORDERED.**

Dated: May 16, 2018



Judge Donna M. Ryu
United States Magistrate Judge